Good morning, your honors. My name is Jeff Black. I represent the appellant Kathleen Nichols, and I'd like to reserve two minutes for rebuttal time. As set forth in the first appeal, appellate brief, Ms. Nichols was punished for attending a public meeting. And that's contrary to the state law and the district's own regulation and the United States Constitution. Now, Ms. Nichols was not subject to a patronage dismissal. And I think that's the main issue here is the talk of patronage dismissals. A politician's elected, and somebody campaigned against them, and they said, we should be able to remove this person because of this political process, and I want somebody I can work with. So let me quickly ask you one question about your position on this. Are you arguing that your theory is available even to what we would commonly call a confidential employee, or are you arguing that it's not necessarily available to such an employee, but that your client was not a confidential employee? I'm not sure if I made that clear. Are you arguing theoretically that no patronage dismissal even for confidential employees? Yes, Your Honor. What I'm saying is when you look at Branty and all the Supreme Court cases, the ultimate decision is are political activities an important factor for the job? They always come back to politics. So for normal labor law purposes, your client would be considered a confidential employee. Oh, that's correct. So are you conceding that she is, in the normal parlance, a confidential employee, and just saying that this doctrine, she's protected anyway? That's correct, Your Honor. Okay. Got it. Let's assume you're right in your argument and she doesn't qualify as a confidential employee. Then we're back to the Pickering standard, right? Correct. All right. So if I understand the analysis under that, let me make sure I understand the facts right. Your client went to the school board meeting to see another employee, for the purpose of seeing another employee get awarded, and to see the vote, right? Correct. Didn't speak. Correct. Didn't take a position. Correct. So how do you satisfy the public concern factor that the First Amendment speech be of a public concern at Pickering? That's my trouble with your argument. Conceding your major point is that there doesn't seem to be speech here. It's guilt by association, if you will, but I'm not sure that that is speech that we would say rises to the level of public concern within the Pickering analysis. And what I put forth, Your Honor, and how I handle that analysis is a public meeting, the state law and the regulation of the district said, everyone welcome to a public meeting. We want you to come and attend and hear what your public body is doing. She goes out then and exercises that right to attend this meeting and sit by who she chooses, which is the association aspect of I'm making a statement that I'm concerned, I'm interested in what my board is doing. And that, to me, the public meeting means it's a public concern, because otherwise it wouldn't be in public. Well, the question I think is whether it's speech and whether every form of important activity falls within speech protections of Pickering. At least that's what I think. If Judge Thomas isn't asking that, I'm asking that. In other words, there are a lot of important things that people do that aren't speech. And how far into other rights, such as associational rights, is Pickering intended to go? I understand the complexity of the question. And what I'm saying is if Nichols had gone to a political rally and just attended, she's supporting the political rally, and I think that's the case to say that's a form of speech. In this case, she's going just to a public meeting. And I'm saying you can draw the line saying that if you're going to a public meeting, that is a form of speech saying you're concerned about what your public body is going to do. That's the speech. If she didn't go or she just met with friends and talked to people, but she made a public appearance at a public event for a specific purpose, and I think that puts you over the edge for a speech contest. It may be speech, but it still has to be speech in a public employee context that rises to the level of something that's of public concern. Now, the Supreme Court has defined it this way. Public speech is of public concern if it helps citizens to make informed decisions about the operation of their government. The problem I have with your theory is that she wasn't trying to say anything. She was attending to watch an award be given. She may have been there to support, but her testimony is she was there to see the results of the vote. So best you have may be an imputed speech, but I'm not sure it rises, and I grant you that her attendance there may rise to the level of certainly first-amendment protections of some sort. But in the public employee context, I'm not sure that I can draw the lines between the two points of speech being of public concern so that we end up in a Pickering balancing test. I know that was a wordy question. No, and I think I understand that if she's going there, you know, of public concern, I swing back into the statute and the regulation that says the public is concerned to see how their, excuse me, their elected officials are performing, and we want you to come and watch this happen. That's why we have the open meetings. We want it to be transparent so they can see. So the public concern of any board meeting to me is it's almost implicit in the public meeting that the public is concerned because I elected you, this board, excuse me, and therefore I want to see how you're functioning. But how did her speech, to use a Supreme Court phrase, help the citizens to make informed decisions about the operation of their government? I mean, if she'd stood up and made a statement of support, I think maybe that rises the level. But by her own testimony, she wasn't there to do that. She didn't try to do that. And I think part of her gripe is that it was people imputed that to her erroneously. That being said, how does that fit with your theory? It may fit with the theory of wrongful termination, but I'm not sure it fits with the first amendment retaliation theory in the public context. I understand, Your Honor. You're right. Her attendance at the meeting can really only be said to say I'm showing the public that to me this is important, not the other way of it's important to everybody because she went on her own without making a statement of everyone should come to this meeting because, you know, things are happening or so forth. But I still have trouble separating that from her first amendment rights to be there because, as you stated, they imputed, which is interesting because if all inferences are to be drawn in favor of the plaintiff, they draw an inference against Ms. Nichols saying I'm inferring that you're there to support the general counsel. And I'm like, okay, and therefore because of that, that sole action, I'm going to force you out of the job. And the chilling effect it's going to have on public meeting attendance, which is an important factor, is significant. One law and policy says everybody should come and attend, and now they're switching it to saying, guess what? You know, depending on who you sit next to, if we just see you there, we can take action. And, again, the significance of this is the testimony of the superintendent was that he had no problem with her at the meeting. The mid-level manager, Ms. Dancers, created this new loyalty and issue solely based on her attendance at a public meeting. And I look at that as the broader first amendment issue saying does the court want to expand a patronage dismissal to that set of circumstances, saying, hey, no longer the elected official is the one making the decision, but some mid-level officials speculating on what could happen in the future, they can make a decision to say you can't be here anymore. You have about a minute and 30 left. I'll reserve. Thank you, Your Honor. Members of the Court and counsel, I'm going to start where Mr. Blank did, and we can shift to the other question if you'd like, because I think it's critical to look at the very question that was referred to, and that's the confidential act, confidentiality, or confidential status of this person. It is a threshold issue as found by the district court in this case to take a look at this particular individual and make a determination whether she was a policymaker or a confidential employee. The mistake that is made by the plaintiff in this case in arguing it is that it has to be a patronage or political kind of activity involved. Quite clearly, the Holbrook case, Ninth Circuit case, as well as the Branty case and other cases deal with issues other than merely political activity and expand the concept of political activity to talk, yes, about some, it can be some political speech. It can be support. It can be expression. But as specifically found in Holbrook, it can be loyalty, and that's what was found in this particular instance by the district court in looking at the totality of the circumstance and the support that was being given in the nature of the job assignment. He started out as his case. Kennedy. Again, political party question, right? Pardon me? Hope they're involved with the political party. It quite clearly did, but other cases don't necessarily involve or require that. Do you take the position that the political patronage dismissal cases are applicable or not applicable here? I think they're applicable, but it's not required to be necessarily political patronage or political activity because the concept is broader, Your Honor. That's what I thought you were saying. But it strikes me I don't understand why they're applicable. She does not allege she suffered an adverse employment action as a result of her political activity. She doesn't complain about that. And that's when the patronage cases come in. It seems to me it's gotten complicated by the patronage cases. It seems to me we could carve those out and decide on the remaining cases that you assert would be more successful. Why do we need to bother about the political patronage cases when she doesn't contend at all that she was fired because of her political activity? Well, she does not contend this, but to find and take a look at whether she was a confidential or policymaking employee makes an exception. That's another issue. That's another issue. But if she doesn't contend that, then the issue is not before the court. So I don't know why we would bother with it in our analysis. Well, it obviously was what the district court looked at at the first instance. It's what was argued before him. And certainly we can step on to what this was really. But it was before the court and it was argued, and I'm just wondering why. Didn't that just confuse the issue? Well, I don't think it confused the issue, but I can go to the others. And the reason I don't believe that it confused the issue is that political activity is broadly defined. And under that umbrage comes the question of loyalty. If a person falls into the category by factual analysis of having actually been a confidential employee which was admitted by counsel. Here's the problem I have with your analysis. I mean, all of our patronage cases are patronage cases. They're basically political cases. It seems to me that what you're arguing for is an expansion of this doctrine to some notion of personal loyalty that would stretch it beyond its boundaries by quite a margin. You can say, I don't think this person is loyal, and all of a sudden you've converted people into at-will employees across the board. Every legal secretary is going to be falling into that category. I don't believe so, Your Honor. And the reason I don't believe so is all you must do is go through the analysis that the district judge did to take a look at the facts that this particular and the performance and what she had to do. This was a single office. We're not talking about all legal secretaries. She was in charge and had a great deal of very independent responsibility in that office. She was a liaison, if you will, to the general public as well as administrative and non-administrative people. She was intimately involved in very sensitive issues regarding litigation, regarding negotiations, regarding employee rights. She acknowledges, and it's part of her job description, she was confidential. She started out this office with the general counsel who's defending her here and representing her. They both formed it together. They were there for a period of years. It was a close relationship. And what happened in this case, as really was gone through by the district court, is the general counsel was brought in a question by the superintendent, who speaks on behalf of the district, as admitted in the case that he filed before the Ninth Circuit, and that that dispute was something she intimately participated in by way of a November 19th meeting in 2003, being there to take special notes for him, by way of preparing some of the documents that were submitted to the trustees relating to his own employment circumstance, by remaining in continuous contact with him from November 19th, 2003, to January 16th, 2004, when he was suspended from his job. Now, what we're talking about has nothing to do with our typical situation where you have a political change in an office and you have people from the other party in confidential positions who may have run against that person. That's a marked difference from what you're talking about, because you're asking us to take all those cases, and I know I'm repeating myself, and extend it into a concept of personal loyalty. Right? Well, I believe that same thing has been done elsewhere in the concept of Walker v. City of Lakewood and Vargas v. Harrison. It doesn't necessarily have to be a political activity, because political activity has been defined broader. But I understand what you're saying here, and what I am saying in response is that this particular person, it doesn't have to be an elected person. None of the, in those two cases I cited, it was an elected circumstance. One, the Walker case, which is the Ninth Circuit case, was an independent housing authority. It wasn't a patronage kind of case. And the whole of it wasn't. And you'd like to get into another one, why then all we have to do is move away from the patronage cases like the Fifth and take a look at whether or not she was qualified for this particular work, and whether the transfer order was something that can stand, and whether or not there's a political speech question, as we're having troubles with anyway. I'm just wondering whether or not this case has become more complicated than what it really is. Well, perhaps that's the case. We've argued it, and I think you understand my point, and I'm understanding yours. So perhaps we can move on to the area of the public concern and the Pickering kind of analogy. Yes, I'm curious for your theory on how we apply Pickering, which is a pure, ordinary speech case, to a claim of First Amendment associational rights, where, as was stated in argument here, the right is to attend a public meeting, and that's not speech in the normal sense. How does Pickering apply? Of course, what has been argued here and what was set out in the complaint was not attendance at a public meeting. What it was was the associational right, and it was retaliation on the basis of that association, and that's what the Court headed under its consideration. The first question, and it was really raised by Judge Thomas, was the question, is this really a matter of public concern? Quite clearly, it begs the question by saying this was a public meeting, because in this particular case, we know exactly why she was there. She was there because to honor another friend who was getting an award, and she was there to find out a personal employment circumstance relating to her. She wanted to know if the legal division was going to continue as a legal division. The issue before the Board of Trustees was the issue of the dismissal of the general counsel, but she had two questions, as stated in her deposition testimony. A, she wanted to find out whether her position in the legal department would go forward and whether the general counsel would be the one with whom she might be working. Those are personal employment circumstances and the type of thing that is specifically exempted under the areas of whether a matter is of public concern. You know, this is where I find this case odd, and I think probably my discomfort is similar to Judge Wallace's, maybe in different degrees. All that is true. You treated this, your client treated this as a matter of she was taking a public stand, a public concern in support of this person, and she was fired for that. You do that to say, and you had a right to do that. This was your whole argument, and the district court bought it. You had a right to do that because she was a confidential employee. Now, if we say, well, we don't think that doctrine applies, I don't know where that leaves us with Pickering, because I think on her testimony, I'm not sure it's a matter of public concern, but you treated it as a matter of public, or your client treated it as a matter of public concern, and that she was expressing a political belief. Well, what the client did was a totality and a review indicating that it was her own loyalty, which the district court focused on as well that created the problem. If she was going to continue with a new counsel, continue with outside counsel, she would be handling matters directly relating to Mr. Blank as general counsel, because he had filed suit. She was aware that he had filed suit. She was completely aware and took his position in totality. Her testimony quite clearly indicates that she agreed with Mr. Blank. She thought the district's position was unfair relating to Mr. Blank and that he was right, that he should be continued. Now, if you take that and take a look at it, then her loyalty in continuing with a new counsel, with general counsel, when she had to deal with the same sensitive files and the same confidentiality requirements, places her really in a position and the district in a position of not having to tolerate something of that sort. Yes, it was maybe the straw that broke the camel's back, and it may look like, okay, we're saying a matter of public concern. What we're saying, it was her matter of private concern, but it was her expression when coupled with the other items that, in fact, she was in support of Mr. Blank and would have to go forward to work under a circumstance that no person, and they don't have to be just an elected person, would really tolerate. And certainly the Pickering concept, if you use the analysis, it doesn't qualify. And the most important thing, however, it is not a matter of public concern, so it's not applicable. Thank you. If you have more questions, I'd be happy to answer them.  Briefly, Your Honor, the undisputed evidence from this dancer was prior to this meeting, she had no problem with Ms. Nichols' performance. Bringing up November is irrelevant. In other words, her statement is solely because she attended the meeting, we took this action. Secondly, Ms. Nichols never did anything contrary to the district. What has been referred to is she didn't agree with the superintendent's position. The district acted on March 23rd. That was the first time there was district action. The Walker case by the Ninth Circuit also, what it states is on, I don't know which page I'm on here, on page 1132, the analysis is not intended to be formalistic. In Fazio, we explain that the essential inquiry is not whether the label policymaker or confidential fits, rather the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance. So it does have a political angle, not just solely the fact that you're confidential. And the fact that, you know, potentially she'd have access to files and there'd be a problem, that wasn't an issue either because Mr. Cox took all the files that were existing at the time. So there were no current or existing files there anymore anyway. And I think the Court hit the nail on the head. They were treating her as a politically motivated act by going to this board meeting, and that's why they took their action, and that's why we brought the claim that way, to say it's not, it doesn't fit your confidentiality exception. And I'll submit on that, Your Honor. We'll take a 15-minute break. I will ask for the record that the case of Armento v. Aeronautical Leasing is submitted on the briefs, and Trustees Construction Industry Labor's Health and Welfare Trust v. C.W. Enterprise is also submitted on the briefs. We return with your argument in Thomas v. Mundell.  Thank you. So he's here for one week, right? Thank you. Thank you. I've decided today to help us extend on one issue, which is freeway.  I'm just doubting the case, it just literally came out this morning. You guys are dead. No, I can't believe this. He had a girlfriend, everything. He had an island in San Francisco. Well, yes, except the fact that it was 100 years ago. It was horrible when it was two years ago. I was there on vacation, and somebody had a computer and I didn't take it. I had somebody else pick it up, and the other person was a surrogate. I said, well, it's your surgery. Well, there was no impact. There was no nexus. As you can barely see, I think it's ridiculous. It's not a beautiful situation. Yes, that's just how it is. You have to be kidding me. I think it's ridiculous. I think it's ridiculous. I don't understand. I don't understand. I don't understand. I just find it ridiculous that we have the light issue. It's something we need to get. We have the light issue. We need to do that. Any time there's a problem, we're going to say, you can bring this. It's already written in the article. I know. I know. That's why it's so weird. That's why it's so interesting. You guys always come and explain, but there aren't the same amount of questions. I don't understand. It's ridiculous. It's ridiculous. It's ridiculous. I don't understand. Well, I don't know. I've got quite a few problems. I haven't been in this room before. I have to apply on a regular, non-requiring basis. There is an actual form on the landscape. There's an actual form on the landscape. On the website, I have to apply and then I essentially get an order. Yes, sir. Yes. And there's actually a type of telephone connection between the video camera and the system. When I have a place in time, this stuff is going from there to here. I'm using those cameras here. It's not great, but it's pretty great. I'm using a video camera. I'm sorry. Yeah. Almost. It's not like... I hope so. Well, you saw how it was changing the... It's an interesting thing. I was going to say that as well. I think I just have to... Never mind. Just... No, you don't even know. Look. I've been up there more than 50 years. It only hasn't changed one thing. It was important. I can take the same arguments that I have, but I need to wait for a solution. Because it's a kind of nature. It's not conservative. It's more or less. I will not be able to get there. So it's just this tiny little...    little... little... little... little... little... little... little... little... little... little... little... little... little... little... little... little...    little... little... little... little... little... little... little... little... little... little... All right.  Thank you.
judges: Wallace, Thomas, Graber